# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

**RED DOOR PROPERTY**                          **CASE NO. 11-02704-KMS**
**MANAGEMENT LLC**

**DEBTOR**                                                      **CHAPTER 11**

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION TO TRANSFER VENUE

THIS MATTER came before the Court for hearing ("Hearing") on October 6, 2011, on the Motion for Transfer to Eastern District of Louisiana ("Motion for Transfer") (Dkt. No. 32), and the Brief in Support of the Motion to Transfer ("Brief") (Dkt. No. 33) filed by First American Bank and Trust ("FABT"), and the Answer and Response to First American Bank and Trust's Motion for Transfer to Eastern District of Louisiana ("Response") (Dkt. No. 46) filed by Red Door Property Management, LLC ("Red Door"), the debtor in possession ("Debtor") in the above-styled bankruptcy case. Stephen E. Gardner appeared at the Hearing on behalf of FABT; Craig M. Geno appeared on behalf of Red Door; and Christopher Steiskal appeared on behalf of the United States Trustee. Having considered the pleadings, the evidence and testimony presented at the Hearing and the applicable law, the Court finds that the Motion for Transfer should be denied for the following reasons.

### Jurisdiction

This Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and § 1408. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).[1]

---

[1] *See In re Enron Corp.*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002) (motion to transfer venue is core matter as it concerns administration of estate); *In re Pope Vineyards*, 90 B.R. 252, 254 (Bankr. S.D. Tex. 1988) (motion to

**Facts and Procedural Background**

1. On June 20, 2011, Joel C. Groshong ("Groshong") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in this Court. *In re Groshong*, No. 11-02179-KMS (Bankr. S.D. Miss. filed June 20, 2011) (hereinafter referred to as "*Groshong* Dkt. No. __"). On Schedule I, Groshong lists his occupation as property management, and his "Statement of Financial Affairs" reflects rental income from real properties. (*Groshong* Dkt. Nos. 40, 41). The petition lists the address for Groshong as "2009 Temple Road, Magnolia, MS." (*Groshong* Dkt. No. 1).

2. In addition to a 99% ownership interest in Red Door, Groshong's assets primarily consist of various rental properties in Mississippi, Louisiana and Oregon, including two properties in Louisiana that serve as collateral for a loan from FABT to Red Door.[2] (*Groshong* Dkt. No. 41, Sch. A).

3. Groshong's schedules identify FABT as a creditor holding a disputed claim in the amount of $1,612,952.59 on a "Personal guaranty of 3 loans of Red Door Property Management, LLC, secured by real property located in New Orleans, LA." (*Id.* at Sch. F). FABT was included on the initial creditor matrix filed by Groshong on June 23, 2011. (*Groshong* Dkt. No. 9).

4. The schedules also identify a lease between Groshong, as Lessor, and Red Door, as Lessee, for office space at 2009 Temple Road in Magnolia, Mississippi. (*Groshong* Dkt. No. 41, Sch. G).

---

transfer venue is a matter concerning the administration of the estate within 28 U.S.C. § 157(b)(2)(A) and is a core proceeding); *In re Ridgely Commc'ns, Inc.,* 107 B.R. 72, 77 (Bankr. D. Md. 1989).

[2] Schedule B includes the following notation: "NOTE: RED DOOR MANAGEMENT, LLC HAS NO APPARENT MARKET VALUE, SINCE ITS DEBT OF APP. $1,600,000 ON ITS REAL PROPERTY IS THE SAME AS ITS VALUE."

5. On August 4, 2011, approximately six weeks after Groshong filed his individual Chapter 11 case in this Court, Red Door filed a voluntary petition for relief under Chapter 11 in this Court. *In re Red Door Prop. Mgmt. LLC,* No. 11-02704-KMS (Bankr. S.D. Miss. filed Aug. 4, 2011) (hereinafter referred to as "Dkt. No. ___"). Groshong signed the petition as the authorized individual on behalf of the company. (Dkt. No. 1). On the Petition, Red Door's address is listed as "2009 Temple Road, Magnolia, MS," the same address used by Groshong in his individual bankruptcy. *Id.*

6. FABT is the only creditor listed in Red Door's bankruptcy schedules.[3] Schedule D lists FABT's claim in the amount of $1,582,921.76 on a Note and Deed of Trust as to "Ten Properties on Schedule A & 2 Properties titled in Joel C. Groshong's name." The property is valued at $1,629,783.93 and the claim is disputed (Dkt. No. 43).

7. Red Door's Schedules list Groshong as a co-debtor on the debt with FABT. *Id.*

8. Red Door's Statement of Financial Affairs identifies Groshong as the Managing Member with a 99% ownership interest in the company. Groshong is also listed as the individual who was in possession of the books of account and records of the debtor at the commencement of the case. (Dkt. No. 42).

9. On August 19, 2011, FABT filed its Motion for Transfer and Brief requesting that the Red Door bankruptcy be transferred to the United States Bankruptcy Court for the Eastern District of Louisiana.

10. On September 14, 2011, Red Door filed its Response denying that FABT was entitled to the relief requested and seeking dismissal of the Motion for Transfer.

---

[3] Only two parties are shown on the creditor matrix; FABT in Vacherie, LA, and Groshong in Magnolia, MS.

11. The matter was set for hearing[4] on October 6, 2011, and after presentation of evidence, testimony of witnesses and arguments of counsel, the Court took the matter under advisement.

### The Motion for Transfer

FABT filed its Motion for Transfer pursuant to 28 U.S.C. §§ 1408 and 1412 and Federal Rule of Bankruptcy Procedure 1014, requesting that the Court transfer Red Door's Chapter 11 bankruptcy proceeding to the United States Bankruptcy Court for the Eastern District of Louisiana and claiming that venue in this Court is not proper or convenient. FABT asserts that Red Door's Chapter 11 bankruptcy venue was selected in this Court pursuant to 28 U.S.C. § 1408(2) on a "tenuous allegation of affiliate jurisdiction" in conjunction with the individual Chapter 11 proceeding filed by Groshong. (Motion for Transfer, Dkt. No. 32, at 1).

FABT argues that administration of Red Door's bankruptcy case in this Court would be an inefficient and wasteful use of the Court's resources, and would be inconvenient and burdensome to FABT. (Motion for Transfer, Dkt. No 32, at 2). FABT points to various factors in support of its argument, including that the debt arose in the Eastern District of Louisiana, witnesses and the debtor's real property are located there,[5] FABT (the debtor's only non-affiliated creditor) is located there,[6] and Red Door is domiciled there.[7] FABT urges that transfer

---

[4] The Motion for Transfer was set for hearing before the Court at the William M. Colmer Federal Building in Hattiesburg, Mississippi. Although the Court currently travels to Hattiesburg one day each month for hearings at that location, the Court normally sits at the Dan M. Russell, Jr. U. S. Courthouse in Gulfport, Mississippi.

[5] FABT points out that it initiated foreclosure proceedings on the real property in Louisiana based upon Red Door's default on its indebtedness to FABT and that FABT was appointed "Keeper" in charge of the properties during the foreclosure process. Red Door filed its bankruptcy petition seven days after the appointment of FABT as "Keeper."

[6] FABT is a Louisiana bank with its principal place of business in Vacherie, Louisiana. (Motion for Transfer, Dkt. No. 32, at 1). Red Door admits these allegations. (Response, Dkt. No. 46, at 1). FABT also asserts that it is a creditor of Red Door and the holder of three promissory notes secured by multiple mortgages on ten parcels of real property in New Orleans, Louisiana. (Motion for Transfer, Dkt. No. 32, at 1). Red Door admits it is indebted to FABT, but also points out that FABT holds indebtedness of the affiliated individual debtor, Joel C. Groshong. (Response, Dkt. No. 46, at 1).

to Louisiana could have no adverse impact on any other non-affiliated creditor of Red Door, and that venue should be transferred to the Eastern District of Louisiana in the interest of justice and for the convenience of the parties pursuant to Rule 1014(a)(1).

Red Door asserts that venue is appropriate in this Court on the basis of affiliate jurisdiction since Groshong is the majority equity security holder of Red Door and the Debtor's "nerve center" is located in Mississippi. (Response, Dkt. No. 46, at 1-2). Red Door states that it is actively managed and controlled in Mississippi, that it conducts its banking in Mississippi and that it owns personal property located in Mississippi. The Debtor also urges that FABT will have to deal with litigation in Groshong's individual bankruptcy in Mississippi, and that a transfer of venue will require the Debtor to incur unnecessary expenses in litigating in two courts in two states. In addition, Red Door asserts that actions in its Chapter 11 case will impact Groshong's individual bankruptcy case with respect to his equity security interest and guaranty of the debt to FABT.

At the Hearing, Malcolm J. Peytavin ("Peytavin"), Senior Vice President of FABT, testified on behalf of FABT, stating that Red Door owns ten properties with a total of twenty rental units, all located within close proximity to each other in the city of New Orleans. These properties are held as collateral for the indebtedness owed to FABT by Red Door. He stated that the bank initiated a foreclosure action on the properties in July of 2011 and FABT was appointed by the Louisiana court as "Keeper" of the properties authorizing the bank to collect rents pending the foreclosure action. Peytavin testified that FABT held a guaranty executed by Groshong as additional collateral for the multiple indebtedness mortgage of Red Door.

---

[7] FABT avers that Red Door is a Louisiana limited liability company domiciled at 4737 Venus Street, New Orleans, Louisiana, and that the Red Door owns rental property in New Orleans. (Motion for Transfer, Dkt. No. 32, at 1). Red Door admits these facts. (Response, Dkt. No. 46, at 1). Red Door's schedules reflect that all of the Debtor's real property is located in New Orleans. (Dkt. No. 43).

Page **5** of **15**

Peytavin testified that the distance from the bank in Vacherie to New Orleans was approximately forty miles. He also testified that a Louisiana appraiser would have to be hired in connection with valuation of the Red Door properties and that an appraiser from Mandeville or Slidell, Louisiana had performed prior appraisals. He indicated there may be a number of witnesses depending on the complexity of litigation. He stated that the economic impact on the bank would be substantially greater if the venue was not changed to Louisiana.

Groshong testified that he had lived at the address in Magnolia, Mississippi since 2006, and that he previously lived in Oregon. He owns 99% of Red Door and he operates the day-to-day business of the company from an office located in his home in Magnolia. Groshong testified that Red Door conducts its banking operations out of a bank located in McComb, Mississippi. He further testified that he maintains certain personal property and equipment, such as lawn equipment and appliances, used in the business of Red Door at his Mississippi property. Groshong individually owns two rental properties upon which FABT holds a mortgage that are located relatively close to the Red Door properties in New Orleans and that are similar in design and construction to the Red Door properties. Groshong stated that the on-site property manager for all of the rental units lives at the New Orleans address that is the domicile address for Red Door.

### Legal Analysis

Venue in cases filed under the Bankruptcy Code is provided in 28 U.S.C. § 1408 as follows:

**§ 1408. Venue of cases under title 11**

Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district--

    **(1)** in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

    **(2)** in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

28 U.S.C. § 1408. An "affiliate" is defined under Title 11 to include "an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, . . . ." 11 U.S.C. § 101(2)(A). With regard to Red Door, venue is proper in this Court pursuant to § 1408(2) because the bankruptcy of Groshong, the holder of a 99% ownership interest in Red Door, is properly filed in this Court.

    A properly filed case may be transferred to another venue in accordance with 28 U.S.C. § 1412 and Federal Rule of Bankruptcy Procedure 1014. Section 1412 provides that, "[a] district court may transfer a case or proceeding under Title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Federal Rule of Bankruptcy Procedure 1014 provides the following, in part:

    **Rule 1014. Dismissal and Change of Venue**

    **(a) Dismissal and Transfer of Cases**.

    **(1) Cases Filed in Proper District.** If a petition is filed in the proper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.

Fed. R. Bankr. P. 1014(a). Therefore, under applicable statutes and rules, a case under Title 11 may be transferred if a determination is made that transfer would be in the interest of justice or

for the convenience of the parties.[8]  The party challenging venue must establish that venue is improper by a preponderance of the evidence.  *See In re Cole*, No. 08-30725-HDH-11, 2008 WL 2857118, at *1 (Bankr. N.D. Tex. July 21, 2008); *In re Peachtree Lane Assocs., Ltd.*, 150 F.3d 788, 792 (7th Cir. 1998); *In re Scotia Dev. LLC,* No. 07-20027, 2007 WL 1192137, at *8 (Bankr. S.D. Tex. Apr. 20, 2007) (movants bear the burden of proof to show by preponderance of evidence that venue should be transferred and plaintiff's choice of forum should be respected unless it is clearly outweighed by other considerations); *In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008) (power to transfer case should be exercised cautiously); *In re Enron*, 274 B.R. at 342 (decision to transfer venue is in court's discretion based on individualized case-by-case analysis of convenience and fairness).

To determine whether a transfer is in the interest or justice or for the convenience of parties, courts have looked to factors considered by the Court of Appeals for the Fifth Circuit ("Fifth Circuit") in *Puerto Rico v. Commonwealth Oil Ref. Co. (In re Commonwealth Oil Ref. Co.)*, 596 F.2d 1239 (5th Cir. 1979).[9]  These factors include:

(1) The proximity of creditors to the Court;

---

[8] Further provisions of the Rule reflect that it was contemplated that it may be in the best the interest of justice or convenience of parties for affiliated cases to proceed in the same court.  Specifically, the rule provides:

> **(b) Procedure When Petitions Involving the Same Debtor or Related Debtors are Filed in Different Courts.** If petitions commencing cases under the Code or seeking recognition under chapter 15 are filed in different districts by, regarding, or against (1) the same debtor, (2) a partnership and one or more of its general partners, (3) two or more general partners, or (4) a debtor and an affiliate, on motion filed in the district in which the petition filed first is pending and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the court may determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed. Except as otherwise ordered by the court in the district in which the petition filed first is pending, the proceedings on the other petitions shall be stayed by the courts in which they have been filed until the determination is made.

Fed. R. Bankr. P. 1014(b).

[9] Although *Commonwealth Oil* was decided under former bankruptcy rules and statutes, the factors utilized by the court are frequently cited in determining whether a transfer would be in the interest of justice or for the convenience of parties under 28 U.S.C. § 1412 and Federal Rule of Bankruptcy Procedure 1014(b) where there is a choice between two districts in which venue is proper.  *See In re Reichmann Petroleum Corp,* 364 B.R. 917, 922 (Bankr. E.D. Tex. 2007); *Ridgely Commc'ns*, 107 B.R. at 78.

(2) The proximity of the debtor to the Court;

(3) The proximity of the witnesses necessary to the administration of the estate;

(4) The location of the assets;

(5) The economic administration of the estate;

(6) Whether ancillary administration will be necessary.

*Id.* at 1247.[10] According to the Fifth Circuit, the most important consideration is "whether the requested transfer would promote the economic and efficient administration of the estate." *Id.* Adopting a pragmatic approach, the Court held "that justice was best served by a course of action calculated to maintain the debtor as a viable business." *See Ridgely Commc'ns*, 107 B.R. at 78 (*citing Commonwealth Oil* at 1248).[11]

In cases involving affiliated debtors, courts often consider "whether the intertwined relationship of debtors requires proceedings in one district." *Hadar Leasing Int'l Co. v. D.H. Overmyer Telecasting Co. (In re Hadar Leasing Int'l Co.)*, 14 B.R. 819, 820 (S.D.N.Y. 1981), (*citing In re Banker's Trust,* 403 F.2d 16 (7th Cir. 1968) and *In re Hudik-Ross,* 198 F. Supp. 695 (S.D.N.Y. 1961)); *see also Ridgely Commc'ns*, 107 B.R. at 78; *In re Waits,* 70 B.R. 591, 595 (Bankr. S.D.N.Y. 1987); *In re Ryan,* 38 B.R. 917, 921 (Bankr. N.D. Ill. 1984); *In re Andover*

---

[10] The Fifth Circuit has considered public and private interest factors in deciding motions to transfer under 28 U.S.C. § 1404. The private concerns to be considered include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law. *In re Volkswagen of America, Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) (internal citations omitted). Although these factors are appropriate for most transfer cases, they are not exhaustive or exclusive. *Id.* Most, if not all, of these factors are addressed through the use of the bankruptcy specific factors set forth in *Commonwealth Oil*.

[11] As one court recently noted, "[t]here is no litmus test or set of hard and fast rules that offer precise guidance for transfer of venue, and the bankruptcy courts are left to a case-by-case determination based upon all relevant factors." *In re New Luxury Motors, LLC*, No. 10-30835, 2010 WL 817204, at *3 (Bankr. S.D. Tex. Mar. 4, 2010). When the proposed venue is not clearly more convenient than the debtor's chosen venue, the debtor's choice of venue should be upheld. *Id.* (*citing In re Volkswagen of Am. Inc*., 545 F.3d 304 (5th Cir. 2008).

*Data Servs., Inc.,* 35 B.R. 297, 301 (Bankr. S.D.N.Y. 1983). In *Ridgely Commc'ns*, the court considered a change of venue involving affiliated debtors where the individual debtors who owned a majority of stock of the corporate debtor had personally guaranteed debt of the corporate debtor and determined that, "administration of these closely-related cases will be rendered more difficult and expensive if they are separated." *Ridgely Commc'ns*, 107 B.R. at 78. Recognizing that the guarantees created common questions of fact and law, the court held that the determination of these questions would materially affect whether any of the debtors could reorganize. *Id.* at 79.

As in the *Ridgely Comm'cns* case, the interrelationship between Groshong and Red Door militates against granting the Motion for Transfer. Groshong has personally guaranteed the debt of Red Door to FABT and has granted FABT a security interest in two Louisiana properties titled in his name. Groshong operates his property management business, including the management of Red Door, from Mississippi. FABT is a creditor not only of Red Door but also of Groshong individually, and any participation in Groshong's bankruptcy will take place in the Mississippi venue, regardless of the Red Door venue; thus, FABT will be required to come to Mississippi to participate in Groshong's bankruptcy in any event. Clearly it would be more convenient and less costly for Groshong to be able to conduct reorganization efforts of the two closely related bankruptcy cases out of one court rather than two courts in different districts.

Certainly, the Louisiana venue is more convenient for FABT, the only creditor of Red Door. However, the Court notes the relatively close proximity between the venues and takes judicial notice[12] that the distance between the courthouse in Gulfport, Mississippi, where this

---

[12] *See Blanning v. Tisch*, 378 F. Supp. 1058, 1060 (E.D. Pa. 1974) (court took judicial notice of comparatively short distance and rapid transit between Philadelphia and New York in considering transfer motion). The Court takes judicial notice of approximate distances between the federal courthouses and the locations of the parties as follows:

Court regularly sits, and the courthouse in New Orleans, Louisiana, is approximately 80 miles; and the distance between the courthouse in Hattiesburg, Mississippi, where this Court sits one day a month as an accommodation to parties in the Hattiesburg area, and the courthouse in New Orleans is approximately 112 miles.[13]

Regarding proximity of the Debtor, the Court recognizes that the company is domiciled in New Orleans, however, the Debtor's principal, Groshong, lives in Magnolia, Mississippi, and runs the business operations of Red Door from the Mississippi location. *See Ridgely Commc'ns*, 107 B.R. at 78 ("brains" of operation is where business decisions are made, not where company is domiciled). Regardless of where Red Door is domiciled, its management is based in Mississippi. The Court finds that there are no appreciable differences in the distances the Debtor's principal would be required to travel from the Magnolia, Mississippi location, being approximately 75 miles from Hattiesburg, 140 miles from Gulfport and 102 miles from New Orleans. However, the Court weighs this factor in favor of Red Door, since it chose the Mississippi venue and its principal already has a pending case in this venue.

Regarding the proximity of witnesses in the case, the only potential witness identified at the Hearing, other than the parties, was an appraiser that may be located in Mandeville or Slidell, Louisiana. Again, the Court does not find that inconvenience, if any, of such witness would be

---

U.S. Courthouse in Gulfport, Mississippi to U.S. Courthouse in New Orleans, Louisiana, - 80 miles
U.S. Courthouse in New Orleans, Louisiana to U.S. Courthouse in Hattiesburg, Mississippi – 112 miles
2009 Temple Road, Magnolia, Mississippi to U.S. Courthouse in Hattiesburg, Mississippi – 75 miles
2009 Temple Road, Magnolia, Mississippi to U.S. Courthouse in Gulfport, Mississippi – 139 miles
2009 Temple Road, Magnolia, Mississippi to U.S. Courthouse in New Orleans, Louisiana – 102 miles
Vacherie, Louisiana to U.S. Courthouse in New Orleans, Louisiana – 52 miles
Vacherie, Louisiana to U.S. Courthouse in Gulfport, Mississippi – 126 miles
Vacherie, Louisiana to U.S. Courthouse in Hattiesburg, Mississippi – 159 miles

[13] In the event there is a conflict with the monthly Hattiesburg hearing date or a specific hearing will take a significant amount of time, the Court sets alternate hearing dates in Gulfport, Mississippi. In fact, for these reasons, several hearings in the *Groshong* case are scheduled to be heard in Gulfport next month.

sufficient to justify transfer, noting the distance from Mandeville to New Orleans is approximately 35 miles, from Mandeville to Gulfport is approximately 67 miles and from Mandeville to Hattiesburg is approximately 100 miles; and noting the distance from Slidell to New Orleans is approximately 34 miles, from Slidell to Gulfport is approximately 49 miles and Slidell to Hattiesburg is approximately 83 miles.  As an additional consideration relating to the convenience of witnesses, the Court considers the 100-mile threshold described by the Fifth Circuit as follows:

> When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment. Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour. *See* FED. R. CIV. P. 45(c)(1).

*In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004); *see also Vick v. NCO Fin. Sys, Inc.*, No. 2:09-CV-114-TJW-CE, 2010 WL 786025, at *2 (E.D. Tex. Feb. 26, 2010) (Fed. R. Civ. P. 45(b)(2) governs places where subpoena issued by a court of the United States may be served, however, subpoena power is subject to Rule 45(c)(3)(A)(ii) which protects non-party witnesses who work or reside more than 100 miles from the courthouse). Given that Mandeville or Slidell, Louisiana are the only locations that have been suggested as possible locations from which a potential non-party witness may travel, the Court does not consider the 100-mile threshold to be a factor that weighs more heavily in favor of a transfer of venue, since the Gulfport courthouse is less than 100 miles from either the New Orleans courthouse, Mandeville or Slidell.  Even if the Hattiesburg location is considered, the distance from Mandeville is approximately 100 miles and

from Slidell is approximately 83 miles. In any event, the "Court needs more than mere allegations . . . that witnesses will be needed and why their inconvenience in traveling to this district outweighs the Debtor's choice to file its petition here." *In re Stony Brook Dev., LLC*, No. 06-13781-WIL, 2006 WL 4547184, at *2 (Bankr. D. Md. Sept. 8, 2006).

The Court finds that the movant has not met its burden of proof to justify a transfer of venue on the factors relating to proximity of the creditors, the debtor and witnesses to the Court. The Court does not find there would be a significant difference between distances to be traveled by the parties or witnesses if they are obliged to come to either Gulfport or Hattiesburg, Mississippi for any hearings at which their presence would be required,[14] instead of to the courthouse in New Orleans.

There is no doubt that the majority of Red Door's assets are located in Louisiana. However, as a Pennsylvania bankruptcy court noted, "the clear majority of cases in which venue has been transferred based upon the location of realty assets involved situations in which the venue selected by the debtor was quite geographically remote from the situs of the real estate." *In re Laguardia Assocs, L.P.,* 316 B.R. 832, 839 (Bankr. E.D. Pa. 2004). The court further observed that the location factor "takes on less compelling significance" given the "relative proximity of the two jurisdictions in question." *Id.* at 839-40; *cf. In re Rehoboth Hospitality, LP*, No. 11-12798 (KG), 2011 WL 5024267, at *5 (Bankr. D. Del. Oct. 19, 2011) (case transferred from Delaware to Texas where lone real estate asset would be better administered by court in district in which it was located). Additionally, it has been noted that where the goal is rehabilitation, the location of assets is not as important and should not be the basis for a venue transfer. *In re Land Stewards, L.C.*, 293 B.R. 364 (Bankr. E.D. Va. 2002) (*citing Commonwealth*

---

[14] Furthermore, the Court notes that telephonic conferences may be available for parties in some instances where circumstances justify and where testimony will not be taken.

*Oil*, 596 F. 2d at 1248). Venue should be retained in the location where the debtor can most successfully reorganize, even if the sole asset is located in another jurisdiction. *See In re Enron*, 274 B.R. at 328 (*citing In re Garden Manor Assocs., L.P.*, 99 B.R. 551, 554-55 (Bankr. S.D.N.Y. 1988)). In the instant case, the presence of Red Door's principal, books, records and bank accounts in the Southern District of Mississippi make this venue the location where Red Door is most likely to successfully reorganize despite the fact that its real property is located in Louisiana.

With regard to ancillary proceedings involving the real property, the Court finds no discernable impact at this point in the reorganization from proceeding in the Mississippi bankruptcy venue rather than the Louisiana venue since the foreclosure proceeding in the Louisiana court has been stayed by the bankruptcy filing and the property will be dealt with under bankruptcy law through the reorganization.[15]

The most important of the considerations in whether to transfer venue to another district is the economic and efficient administration of the estate. *See In re Enron*, 274 B.R. at 348 (*citing Commonwealth Oil*, 596 F. 2d at 1247). As set forth above, economic administration will be best served by retaining this case in Mississippi thereby avoiding costly duplication of effort and promoting efficiency.

**Conclusion**

For the reasons stated above, the Court finds that the Red Door bankruptcy case would be more efficiently and economically administered in this Court as an affiliate case to a pending bankruptcy case pursuant to 28 U.S.C. §§ 1412 and 1408 and Federal Rule of Bankruptcy Procedure 1014, and further finds that FABT has not met its burden by a preponderance of the

---

[15] FABT argued at the Hearing that loan documents would need to be interpreted under Louisiana law; however, Debtor's counsel indicated that that the validity of FABT's mortgage is not contested and there are no particular issues of Louisiana law that would need to be interpreted in the Debtor's bankruptcy case.

evidence to show that venue should be transferred. Accordingly, the Motion for Transfer is **DENIED**.

SO ORDERED.